02-11-427-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00427-CV

 

 


 
 
 In the Interest of K.H., 
 A Child
 
 
  
 
 
  
 
 
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 


----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Father appeals the trial court’s termination of his parental rights to his son
K.H.  Father raises five issues, arguing that the evidence is legally and
factually insufficient to support the best interest finding and factually
insufficient to support the trial court’s findings under Texas Family Code section
161.001(1)(D), (E), and (O).  We will affirm.

 

II.  Factual and Procedural Background

          In
June 2008, Child Protective Services (hereinafter referred to as CPS or the
Department) received a referral for physical abuse of K.H. by Mother and her
boyfriend Lawrence.  During a fight between Mother and Lawrence, Lawrence shook
six-month-old K.H.,[2] turned him upside down,
and threw him down on the wood floor, causing a cut on K.H.’s head and a left
tibia fracture. CPS removed K.H. and placed him in foster care.  Mother told
CPS that K.H.’s Father’s whereabouts were unknown and that he had no contact
with his son. 

          Jennifer
Merritt, the CPS caseworker assigned to K.H.’s case, testified that she
received the case in June 2008 and set up services for Mother.  Merritt also
tracked down Father and gave him a service plan in July 2008.  After the
initial termination trial, the trial court terminated Mother’s parental rights
to K.H. but denied the termination of Father’s parental rights. 

          Following
the trial court’s decision denying termination of Father’s parental rights, on April
7, 2010, the trial court and the parties signed an “Agreed Order For Actions
Necessary For Parent To Obtain Return Of Child” pursuant to family code section
161.001(1)(O).  The trial court ordered Father to comply with the following
tasks on or before August 2, 2010: (1) successfully complete parenting classes
through Merit Family Services; (2) complete a psychological evaluation through
Dr. Nichelle Wiggins; (3) participate in and successfully complete individual
therapy through Positive Influences; (4) submit to random drug tests within
twenty-four hours of a request by CPS; (5) complete a drug assessment through
Merit Family Services and follow all recommendations of the assessment; (6) attend
Alcoholics Anonymous two times per week and provide documentation of
attendance; (7) obtain an Alcoholics Anonymous (AA) sponsor; (8) secure and
maintain stable housing and provide documentation to CPS; (9) maintain legal
employment; (10) develop a support system that can assist him in his parenting
role and provide information identifying his support system to CPS; and (11) successfully
participate in and complete an anger management course through Positive
Influences. 

          On
October 7, 2010, the Department filed a petition for termination of Father’s
parental rights, alleging, among other grounds, that Father had failed to
comply with the provisions of a court order that specifically established the
actions necessary for Father to obtain the return of K.H.  At the termination
trial on May 24, 2011 and June 20, 2011, the trial court heard testimony from
the caseworker and Father that Father had not completed individual therapy, that
Father had not submitted to three requested drug tests within twenty-four hours
of the requests and had also tested positive for drug use throughout the case, that
Father had not followed all of the recommendations from the drug assessment, that
Father had not attended Narcotics Anonymous (NA) two times per week and had not
provided documentation of his attendance,[3] that Father had not
obtained a sponsor, that Father had not maintained employment, and that Father
had not developed a support system to help him with K.H.  The trial court
thereafter found by clear and convincing evidence that Father had knowingly
placed or knowingly allowed K.H. to remain in conditions or surroundings that
endangered the emotional or physical well-being of the child, that Father had
engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangered the physical or emotional well-being of the child, and
that Father had failed to comply with the provisions of a court order that
specifically established the actions necessary for him to obtain the return of
the child.  This appeal followed.

III. 
Evidence Is Legally and Factually Sufficient 

to
Support Termination Findings

 

          In
his five issues, Father argues that the evidence is legally and factually
insufficient to support the best interest finding and factually insufficient to
support the trial court’s findings under section 161.001(1)(D), (E), and (O).  After
setting forth the law for terminating parental rights and the Holley
factors, Father argues in a single sentence:  “Appellant R.H. contends that he
completed all of the services requested of him by the Department.  RR
(2/176–177).”  Father’s one-sentence argument, which references only two pages—neither
of which are in the appellate record,[4] does not explain how the
evidence is legally or factually insufficient to support a best interest
finding under the Holley best interest factors and does not explain how
the evidence is factually insufficient to support the trial court’s findings
under section 161.001(1)(D), (E), and (O).  See Tex. Fam. Code Ann.
§ 161.001(1)(D), (E), (O) (West Supp. 2011); Holley v. Adams, 544
S.W.2d 367, 371–72 (Tex. 1976).  Father’s one-sentence argument contains no citations
to case law or statutory law.  See Tex. R. App. P. 38.1(i); see also
In re A.W., No. 02-03-00349-CV, 2004 WL 1799893, at *6 (Tex. App.—Fort
Worth Aug. 12, 2004, no pet.) (mem. op.) (holding that appellant waived best
interest argument because he presented no argument or authority that evidence
was legally or factually insufficient to support trial court’s best interest
finding).  Because a parent’s rights to “the companionship, care, custody, and
management” of his or her children are constitutional interests “far more
precious than any property right,” Santosky v. Kramer, 455 U.S. 745,
758–59, 102 S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547
(Tex. 2003), we nonetheless analyze the sufficiency arguments raised by Father
that are necessary to final disposition of this appeal.  

A. 
Standards of Review

In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (West Supp.
2011); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be
established; termination may not be based solely on the best interest of the
child as determined by the trier of fact.  Tex. Dep’t of Human Servs. v.
Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re D.T., 34 S.W.3d 625,
629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. § 161.001; see also §
161.206(a) (West 2008).  Evidence is clear and convincing if it “will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.”  Id. § 101.007 (West
2008).  Due process demands this heightened standard because termination
results in permanent, irrevocable changes for the parent and child.  In re
J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243
S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.

We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573–74.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that Father violated section 161.001(1)(D), (E), and (O) and that the
termination of the parent-child relationship would be in the best interest of K.H. 
Tex. Fam. Code Ann. § 161.001; In re C.H., 89 S.W.3d 17, 28 (Tex.
2002).  If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.  H.R.M., 209 S.W.3d at 108.

 

 

B. 
Sufficient Evidence to Support Section 161.001(1)(O) Finding

          In
his fifth issue, Father argues that the evidence is factually insufficient to
support the trial court’s finding under section 161.001(1)(O).  Father argues
that he completed all of the services requested of him by the Department, but he
does not address his compliance with the trial court’s order of April 7, 2010,
requiring him to complete eleven tasks in order for K.H. to be returned to him.


          Family
code section 161.001(1)(O) states,

          The court
may order termination of the parent-child relationship if the court finds by
clear and convincing evidence:

 

          (1) that
the parent has:

 

          . . . .

 

          (O) failed
to comply with the provisions of a court order that specifically established
the actions necessary for the parent to obtain the return of the child who has
been in the permanent or temporary managing conservatorship of the Department
of Family and Protective Services for not less than nine months as a result of
the child’s removal from the parent under Chapter 262 for the abuse or neglect
of the child[.]

 

Tex.
Fam. Code Ann. § 161.001(1)(O).

          As
set forth above, the record demonstrates that the trial court heard testimony
from the caseworker and Father that Father had not completed individual
therapy, that Father had not submitted to three requested drug tests within
twenty-four hours of the requests and had also tested positive for drug use
throughout the case, that Father had not followed all of the recommendations
from the drug assessment, that Father had not attended NA two times per week and
had not provided documentation of his attendance, that Father had not obtained
a sponsor, that Father had not maintained employment, and that Father had not
developed a support system to help him with K.H.  

          Father
did not dispute that he had failed to comply with several provisions of the
trial court’s April 7, 2010 order; instead, he contended that his efforts to
complete a portion of the services constituted substantial compliance.  The
statute, however, does not provide for substantial compliance.  See In re
M.C.G., 329 S.W.3d 674, 675 (Tex. App.—Houston
[14th Dist.] 2010, pet. denied) (supp. op. on reh’g) (stating that the family
code does not provide for excuses for failure to comply in assessing a
statutory violation; any excuse goes only to the best interest determination); In
re J.S., 291 S.W.3d 60, 67 (Tex. App.—Eastland
2009, no pet.) (stating that the family code does not provide for substantial
compliance with a family service plan).  Giving due deference to the
factfinder’s findings and not supplanting the judgment with our own, we
hold that, on the entire record, a factfinder could reasonably have formed a
firm conviction or belief that Father had violated section 161.001(1)(O) by
failing to fully comply with the trial court’s April 7, 2010 order specifically
establishing the actions necessary for Father to obtain the return of K.H.  See
H.R.M., 209 S.W.3d at 108; In re C.M.C., 273 S.W.3d 862, 874–76
(Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding
evidence legally and factually sufficient to support section 161.001(1)(O)
finding because mother had failed to comply with numerous provisions of her
service plan); In re C.D.B., 218 S.W.3d 308, 312 (Tex. App.—Dallas
2007, no pet.) (holding evidence legally and factually sufficient to support jury’s
section 161.001(1)(O) finding, even though mother testified that she did not finish
all the services because she did not have transportation to some appointments and
was in jail at the time of some appointments).  We overrule Father’s fifth issue.[5] 

C. 
Sufficient Evidence to Support Section 161.001(2) Finding

In
his first and second issues, Father argues that the evidence is legally and
factually insufficient to support the trial court’s best interest finding. 

There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a) (West
2008). Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(A)     the desires of the child;

(B)     the emotional and physical
needs of the child now and in the future;

(C)     the emotional and physical
danger to the child now and in the future;

(D)     the parental abilities of the
individuals seeking custody; 

(E)     the programs available to
assist these individuals to promote the best interest of the child;

(F)     the plans for the child by
these individuals or by the agency seeking custody;

(G)     the stability of the home or
proposed placement;

(H)     the acts or omissions of the
parent which may indicate that the existing parent-child relationship is not a
proper one; and

(I)      any excuse for the acts or
omissions of the parent.

Holley,
544 S.W.2d at 371–72.

These
factors are not exhaustive; some listed factors may be inapplicable to some
cases; other factors not on the list may also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be
sufficient in a particular case to support a finding that termination is in the
best interest of the child.  Id.  On the other hand, the presence of
scant evidence relevant to each factor will not support such a finding.  Id.

1. 
K.H.’s Desires

          Here,
the record does not contain K.H.’s desires because K.H. did not testify.  The
record reveals that Father visited with K.H. every two weeks for two hours and
said that K.H. was happy to see him “[a]ll the time” and that they have a
“great relationship.” 

          Guadalupe
Palomino, a case aide with CPS who had supervised Father’s visits with K.H.,
testified that Father was really good with K.H. and
that K.H. loved going to see Father.  When Palomino picked up K.H. from his
foster home, he looked forward to visiting with Father and became excited to
see him.  

          Jennifer
Merritt, the caseworker, testified that Father and K.H. were
“somewhat close” and seemed to have fun together every other week at the
visits.  Merritt also testified that K.H. was doing wonderfully in his foster
placement and that he loved his new home, which he had been in for
approximately seven months at the time the termination trial concluded.  

          The
trial court was entitled to find that this factor weighed neither in favor of nor
against termination.

2. 
K.H.’s Emotional and Physical Needs Now and in the Future

          With
regard to K.H.’s emotional and physical needs now and in the future, the record
revealed that K.H. was “very smart,” “very verbal,” was developmentally on
target (having completed speech therapy while in care), and did not appear to
have any special or mental health needs.  As a
three-and-a-half-year-old boy, K.H. undoubtedly required safe, stable housing
and financial provision.  Father, however, was not supporting K.H.
financially or emotionally when the case started, and that had not changed
significantly by the time of the termination trial.  And as set forth in more
detail below, Father was unable to provide safe, stable housing for K.H.  The
trial court was entitled to find that this factor weighed in favor of
termination.

3. 
Emotional and Physical Danger to K.H. Now and in the Future

          With
regard to the emotional and physical danger to K.H. now and in the future, Merritt
testified that Father’s drug use at the time of the termination trial was
“still consistent, which would affect the child.”  Merritt recalled that
Father’s psychological evaluation revealed that he had continued drinking after
being required to install an interlock device on his car and that it would take
him twenty to thirty minutes to pass the test.  Father’s personality disorder
diagnosis (which included substance abuse issues and antisocial personality
disorder), as well as his dangerous decisions that related to law violations,
concerned Merritt. Moreover, throughout the case Father had shown instability
in his employment and an inability to obtain safe housing; Father had made the
decision to live in a home with people who had abused him and acknowledged that
the home environment would be hostile to K.H. because his father did not like
that K.H. was biracial.  The trial court was entitled to find that this factor
weighed in favor of termination.

4. 
Father’s Parental Abilities

          With
regard to Father’s parental abilities, Palomino testified that during the
visits, no threat of any violence or danger was observed with regard to
Father’s treatment of K.H., and Father never appeared to be under the influence
of drugs or alcohol at the visits.  Father communicated with K.H. in an
appropriate manner, played with whatever toys K.H. wanted to play with during
the office visits, and played with him on the playground equipment when the
visits were held at the park.  Palomino testified that it appeared that Father
and K.H. had fun together.  Father appropriately redirected K.H. when he got
into something that he should not play with.  Palomino said that Father’s absences
were few and far between. 

          Father
had completed the parenting classes and testified that he did not think using
drugs was an appropriate parenting decision.  Father, however, believed that he
could parent properly after using amphetamines, cocaine, or marijuana.  Father
denied that he was committing an act of endangerment to K.H. each and every
time he used illegal drugs.  During his psychological evaluation, Father said that
his problems with drinking and using drugs were in the past and that it was no
longer an issue for him.  This was not consistent with evidence that Father had
submitted drug tests and hair tests showing that he had used drugs throughout
the three years that the case was pending. 

          Because
of his drug use, Merritt thought that Father had not demonstrated that he is
ready to be a dad to his son.  Moreover, Merritt did not think that Father had
exhibited the behavior that would show that he could provide a loving, nurturing,
and stable environment for K.H.  Merritt testified that Father appears to have
a “very buddy” relationship with K.H.; Merritt would not say that Father is “a
complete parent figure.”  

          Dr.
Wiggins testified that Father 

has personality
disorder traits [Axis 1 substance abuse issues and Axis 2 antisocial
personality disorder] that will lead to chronic substance and alcohol abuse
issues, most likely.  That will lead to repeated difficulties with the law. 
That it will be the type of person who is not going to show any stability or
consistency in terms of his responsibilities in life. 

 

According
to Dr. Wiggins, Father talked very lovingly about his son but did not seem to
have a realistic understanding of how to provide for him.[6] 

          The
trial court was entitled to find that this factor weighed in favor of
termination.

5. 
The Parties’ Plans for K.H. and Programs to Assist His Best Interests

          With
regard to Father’s plans for K.H., the Department acknowledged that Father
loved K.H. very much and always expressed the desire to have his son live with
him.  Father, however, was being financially supported by his father, did not
have any money saved up, and had not purchased any furniture for K.H. Father
testified that he was ready for K.H. to go home with him even though he would
be homeless because his father and uncle would not allow K.H. to live with them.


          Sharon
Giraud, the attorney ad litem for K.H., asked that Father’s parental rights be
terminated.  She said that the issues of housing and drug addiction had not
been cleared up during the three and half years that the case was pending. She
also mentioned that Father appeared to be “a great babysitter” but that she did
not see a parental bond there. 

          According
to Merritt, the Department believed that it was in K.H.’s best interest for
Father’s parental rights to be terminated.  Merritt asked the trial court to
terminate Father’s parental rights, so that the foster parents could adopt K.H.
The record revealed that the foster family “has all kinds of programs available
to assist them,” including counseling for K.H., if necessary, and that K.H.
would be covered with medical insurance. 

          The
trial court was entitled to find that these factors weighed in favor of
termination.

6. 
The Stability of the Home or Proposed Placement

          During
the three years that Merritt worked the case, Father had only one residence:  he
lived with his father and uncle.  K.H. had never lived with Father.[7]  Merritt
testified that Father’s housing was stable but not appropriate.  Father told
Merritt that a police officer had recently moved close by and that his father
and uncle had to smoke marijuana inside the house instead of outside.  Additionally,
Father’s father told Merritt in May 2010 that K.H. would not be welcome in the
home because he was biracial.  Thus, Father did not have a home that he could
take K.H. to and had not secured one for three years.  Merritt was therefore concerned
about Father’s ability to find his own housing.  Father said that he would be
living on the street if he was not living with his father and his uncle.  And Father
agreed that if the court returned K.H. to him, K.H. would either live in an
environment that would be hostile to him or that he would be homeless.  Because
Father was still living with his father at the time of the termination trial,
Dr. Wiggins opined that Father was stuck and was not ready to make changes. 

          Merritt
testified that K.H. was living in a foster home with a biracial couple. K.H.
was doing wonderfully in his foster placement; he had opened up and was talking
very well.  He loved his new home, which he had been in since November 2010. 

          The
trial court was entitled to find that this factor weighed in favor of
termination.

7.  Father’s Acts or
Omissions that May Indicate that the Existing Parent-Child Relationship Is Not
a Proper One

 

          The
record details Father’s criminal history.  Father pleaded guilty to the
misdemeanor offense of possession of marijuana in 2006 (which was committed on
June 21, 2005), was placed on community supervision for twelve months, was
later adjudicated guilty for violating the conditions of his community
supervision, and was sentenced to thirty days in jail and fined $100.  Father
pleaded guilty to failing to stop at an accident that occurred on June 10, 2007,
and was sentenced to thirty days in jail.  Father pleaded guilty to the
misdemeanor offense of possession of marijuana in 2008 (which was committed on
August 17, 2007) and was sentenced to thirty days in jail.  Father was
convicted for the February 5, 2008 offense of driving while intoxicated with an
open container. 

Carol
Blackmon, the executive director of Merit[8]
Counseling Services, testified that Father was not open and honest about the
level of his addiction during his drug assessment.  But at trial, Father
admitted to being a drug addict and testified that he had been addicted to
drugs since high school.  While the case was pending, Father took a hair strand
drug test in April 2009 and tested positive for amphetamines, cocaine, and
ecstasy; a hair strand test in October 2009 tested positive for cocaine; while
Father was in drug counseling, he tested positive for cocaine on July 13, 2010;
a hair strand collected on September 30, 2010, tested positive for cocaine, the
amount indicated to Merritt that Father had continued to use illegal substances
all along; and a hair follicle test from May 4, 2011, tested positive for
cocaine and marijuana.  On April 13, 2011, Father told Merritt that he had last
used cocaine four or five months prior and had not “used weed in a while.”  Father
admitted that he did not take advantage of all of the programs that he was
offered to help with his drug addiction. 

          Father
had obtained his GED and was completing classes to become a physical trainer.  Father’s
employment history was sporadic, and he relied on his father for financial
provision.  He said that he had found a job in March 2011, but he had not shown
Merritt any paystubs and admitted that he did not have enough money to secure
an appropriate living arrangement.  Father had a child support arrearage of
$2,975.65 at the time of the termination trial.  

          The
trial court was entitled to find that this factor weighed in favor of
termination.

8. 
Excuses for Father’s Acts or Omissions

          Merritt
testified that Father had not given her any excuses for his continued illegal
drug use.  During Father’s testimony, he said that he did not submit to three
drug tests within twenty-four hours of the requests because one time he did not
have any identification and other times he did not have transportation.  Father
said that he was not notified in 2011 that he had failed any drug tests.  Father
also complained that it was hard to develop a parent-child relationship because
he was allowed to see his son only four hours per month.  The trial court was
entitled to find that this factor weighed in favor of termination.

9. 
Analysis of Factors

          After
weighing the evidence as it relates to the Holley factors, we hold that
the evidence is both legally and factually sufficient to support the trial
court’s finding that termination of Father’s parental rights to K.H. is in his
best interest.  See Tex. Fam. Code Ann. § 161.001(2); Jordan v.
Dossey, 325 S.W.3d 700, 733 (Tex. App.—Houston
[1st Dist.] 2010, pet. denied) (holding evidence legally and factually
sufficient to support the trial court’s finding that termination of mother’s
parental rights was in child’s best interest when most of the best interest
factors weighed in favor of termination); In re U.P., 105 S.W.3d 222,
230–32 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied) (holding evidence legally and factually sufficient to support best
interest finding because, among other things, father had abused drugs for
years, could not provide a permanent home, had been convicted of two crimes,
and had failed to provide child support).  We overrule Father’s first and
second issues. 

IV.  Conclusion

          Having
overruled all of the issues necessary for final disposition of this appeal, we
affirm the trial court’s judgment terminating Father’s parental rights to K.H.

 

SUE WALKER

JUSTICE

 

 

 

PANEL: 
GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED:  July 12, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]K.H. was born December 28,
2007.  





[3]Father testified that he
had talked to his caseworker about attending NA meetings instead of AA
meetings; he said that she did not have any objections to that. 





[4]Volume two of the
reporter’s record ends on page 128, and volume three of the reporter’s record
ends on page 118.





[5]Because only one ground
under section 161.001(1) is needed, we need not reach Father’s third and fourth
issues pertaining to the trial court’s findings under subsections (D) and (E). 
See Tex. R. App. P. 47.1 (stating that appellate court need only address
every issue necessary to final disposition of appeal).





[6]Father admitted that he
had fathered another child whom he had not parented and for whom he had not
done anything to establish his paternity. 





[7]Merritt located Father
when K.H. was approximately seven months old, and Father’s service plan, which
included visitation with K.H., was implemented at that time. 





[8]This entity’s name is
spelled a variety of ways in the reporter’s record, but this is the correct
spelling.